I would be very happy if I could agree that the question raised by the demurrer to the answer is the identical question raised by the demurrer to the petition. I heartily concurred in the former decision, but must dissent from the present decision. The difference in the two questions is apparent. The petition alleged that the action of the state office building commission and the Governor of Ohio was arbitrary, actuated by favoritism and collusion, and a gross abuse of its discretion, and that it was brought about solely because of the fact that relator purposed to employ workmen without regard to their affiliation or nonaffiliation with a labor union, and that said action of said commission thereby barred *Page 304 
workmen who are not members of a labor union from the equal rights and privileges to which they are entitled under the Constitution. The demurrer to the petition admitted the truth of those allegations. I concurred in the unanimous decision of this court overruling the demurrer to that petition. The answer, in the second defense thereof, alleged that the work for which relator had submitted a bid was only a part, though a necessary part, of the heating and lighting system for the state office building, and therefore a necessary part of the building itself; that it is necessary for the work on other parts of said building to go forward concurrently with said heating and lighting system; that contracts for the construction of such other portions were previously awarded to contractors who employ union labor exclusively; that members of said unions, such as carpenters, steel workers, plumbers, electricians, iron workers, asbestos workers, and pipe coverers, are now being employed at said building, and that the work for which they are employed will consume for its proper completion a period of time extending beyond the period for the construction and completion of the electric transmission line; that experience during the course of the construction of buildings has demonstrated that the members of trade unions, employed by contractors, refuse to work if employees who are not members of unions are permitted to perform labor on any other part of such building, or on or about the premises upon which such project is under construction; that, as a result of the refusal of union men to work with nonunion men on a public project, continual delays occur and added expenses are entailed. The answer further alleges the necessity for having the heating system installed, because of the present expense of $60 per day for temporary heat, and $390 a day for rent of other buildings for use of state departments, all of which will be housed in the state office building when completed. It is therefore *Page 305 
further alleged that the saving of approximately $4,000 between the bid of relator and the next higher bid would be small in comparison with the loss entailed by the state by reason of delays and other added expenses.
It is apparent, therefore, that the petition and the answer present wholly different questions. The allegations of the petition, admitted by the demurrer, indicated a policy of discrimination against nonunion labor. The answer, the allegations of which are likewise admitted by the demurrer, present a wholly different situation. The building commission is charged with a very grave responsibility. A building involving the expenditure of millions of dollars is under their supervision. It is their view that it was their duty to complete the building without the delays which seemed inevitable unless there was harmony among the workingmen employed upon the different portions of the work. Whether or not the commission was wholly justified in this view, is not for the court to decide. The law imposes upon the commission the duty to ascertain, not merely what bid is the lowest, but what bid is also the best. This court, and all the courts of this state, have for a half century held that this confers a discretionary power upon boards in awarding public contracts, with which the courts may not interfere. The building commission is composed of men of high character. Their conclusions must have the approval of Governor George White before they become effective. This court may not lightly declare that they have abused a discretion. If members of labor unions were being charged with threatening to do unlawful things, a different situation would be presented. All of the things which have been considered by the commission as possible causes of delay are matters which the court has approved and declared to be lawful in La France Electrical Construction Supply Co. v. International Brotherhood of Electrical Workers,108 Ohio St. 61, *Page 306 140 N.E. 899. That decision had the unanimous concurrence of all the members of this court.
It is significant that the majority opinion in this case quotes from the opinion in that case, and approves the statement, "legal means employed by strikers must not be curtailed." The only question before us in the instant case is whether the building commission, in awarding the contract to the best, though not the lowest bidder, has been motivated by coercion rather than by the exercise of a sound discretion. I am unable to see how any vital constitutional question is presented in this case. The controlling principle in this case may be found in the expression of Mr. Justice Harlan inAdair v. United States, 208 U.S. 161, at page 174,28 S.Ct., 277, 280, 52 L.Ed., 436, 13 Ann. Cas., 764, where it is stated: "While, as already suggested, the rights of liberty and property guaranteed by the Constitution against deprivation without due process of law, is subject to such reasonable restraints as the common good or the general welfare may require, it is not within the functions of government — at least in the absence of contract between the parties — to compel any person in the course of his business and against his will to accept or retain the personal services of another, or to compel any person, against his will, to perform personal services for another."
This language was quoted with approval by Mr. Justice Pitney in Coppage v. Kansas, 236 U.S. 1, at page 10 of the opinion,35 S.Ct., 240, 59 L.Ed., 441, L.R.A., 1915C, 960. It is apparent, therefore, that any member of a labor union would be entirely within his constitutional rights in quitting his employment, in the absence of an express contract not to do so.
The office building commission, in recognition of this right, and desiring to save the state the expense and avoid the delays incident to the lawful differences between workingmen, have chosen what they considered the wiser course. *Page 307 
The writ of mandamus cannot be awarded unless there is an abuse of discretion. Section 12283, General Code, provides that it can only be issued to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.
I am of the opinion that relator does not have a clear legal right to the writ in this case.